[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Winthrop Health Care Center, Inc. ("Winthrop"), has applied for a preliminary injunction against the defendant, District 1199, New England Health Care Employees Union, SEIV, AFL-CIO (union"), to prohibit the union and its members from blocking egress and ingress to Winthrop's property, from picketing in Winthrop's driveway, and from "picketing at, throwing missiles of any kind at, spitting at and striking at any person or vehicles entering or departing from Winthrop."
Additionally, Winthrop seeks an order limiting picketers to six persons spread at ten foot intervals and prohibiting the defendant from "assigning agents or representatives to attend at" locations at which non-strikers are picked up and transported to CT Page 6323 Winthrop's premises.
The case was removed to federal court on April 13, 1993, and was, according to the court record, remanded to Superior Court on May 19, 1993. The union filed a motion to dismiss claiming that this court lacked subject matter jurisdiction to consider Winthrop's claim for injunctive relief because Winthrop had sought relief from the National Labor Relations Board ("NLRB") for the same conduct from which it seeks injunctive relief, and that this court was precluded from acting on the application because the NLRB thereupon assumed primary jurisdiction over the claims alleged. The union also asserted that the matter is moot.
The motion to dismiss was heard and denied by the court (Vertefeuille, J.) on June 10, 1993.
On the basis of evidence received over the course of two days, this court makes the following findings.
On April 3, 1993, the union, which represents 200 employees at the nursing home facility operated by Winthrop on Winthrop Avenue, in New Haven, began a strike against Winthrop. In the early days of the strike, Winthrop hired other employees to fill the positions formerly held by the striking members of Local 1199. The union instituted a picket line at the one entrance to the facility. During the first two weeks of the strike, the conduct of the picketers was extreme and included delaying access into the parking lot of cars containing replacement workers, pounding on vans containing such workers, and screaming threats and obscenities at those whom the picketers considered to be scabs.
Since that time, the average number of picketers at the site has dropped to an average of ten to twelve. On June 21, 1993, the union entered into a settlement agreement as to a claim of unfair labor practices by Winthrop and has, by the terms of that settlement, agreed that it will not restrain, assault, coerce or threaten, employees who cross the picket line either at the site or at their residences and will not damage the vehicles of persons crossing the picket line.
In mid-April, representatives of the union met with representatives of the New Haven Police Department to attempt to agree on a format for picketing in front of the facility that would accommodate several interests: 1) allowing the picketers to CT Page 6324 engage in speech and make their views known to those entering the facility, 2) avoiding accidents by providing a requirement that incoming cars slow down and not accelerate through areas where strikers are picketing, 3) allowing reasonable access to and egress from the facility for employees and others, 4) minimizing the amount of police supervision necessary.
The evidence did not establish whether the format worked out between the union and the police was assented to by Winthrop. The format, as described in a memo dated April 15, 1993 from Lt. Stephen Jankowski to Assistant Chief Esserman, provides for strikers to pass across the driveway and express their position for a period of approximately 30 seconds, after which they are to allow a vehicle to pass. The memo states that management is to inform non-strikers driving vans and other vehicles into the driveway that they should travel slowly to avoid injury to pedestrians and to remain in their lane of traffic and not block the other lane of Winthrop Avenue for the 30-second period.
The substance of Lt. Jankowski's order has never been made a formal order of the police department, and it has been subject to varying interpretations by various officers assigned to the police section that includes Winthrop Avenue.
The strikers interpret the memo to guarantee them the right to delay each incoming car for a minimum of 30 seconds, such that if multiple cars are waiting to enter in a line, each can be delayed for 30 seconds. Because a sentence in Lt. Jankowski's memo states that "Vans in convoy will not have to submit to individual 30 second rules but will be considered a single vehicle", Winthrop takes the position that all vehicles arriving together should pass in after a single period of delay. The union says this feature applies only to vans.
While the police have been called to adjudicate numerous disagreements over the application of what has come to be called "the thirty second rule", the court notes that the union has not established that Winthrop ever agreed not to seek injunctive relief in return for the terms of the Jankowski memo, or that compliance with such terms otherwise constitutes a bar to injunctive relief.
The issue before the court is not the enforceability or enforcement of a police memo, but whether Winthrop has proven entitlement to injunctive relief pursuant to 31-115 C.G.S., CT Page 6325 which provides that a court may issue an injunction in a cases involving a labor dispute only if the court finds facts establishing that
 a) unlawful acts have been threatened and will be committed by those who engage in or authorize them;
 b) substantial and irreparable injury to the complainant or his property will follow;
 c) the granting of relief will inflict less injury than denial of relief;
d) the complainant has no remedy at law;
 e) the public officers charged with the duty to protect the complainant's property are unable or unwilling to furnish adequate protection.
Section 31-116 C.G.S. further provides that any injunctive issue in a case involving a labor dispute shall be restricted to the specific acts expressly complained of in the complaint and expressly included in the court's findings of fact.
The court finds that within the four weeks immediately prior to the hearing on the application for preliminary injunctive relief, from ten to fifteen picketers, led by union organizers Leslie Frane and Paul Kumar and union official Michael Phelan, have engaged in picketing between the hours of 6:00 a.m. and 11:00 p.m. on the sidewalk on either side of the driveway and in the driveway of Winthrop. The picketers walk in a circle across the driveway. When an ambulance or vehicle containing visitors to patients arrives at the driveway, the picketers immediately leave the driveway and stand in the sidewalk to let the vehicle pass. When a vehicle that contains a non-striking employee or a vehicle used by Winthrop to transport such employees approaches the end of the driveway, either arriving or leaving, the picketers continue to stand in the driveway chanting messages, yelling insults at those they regard as "scabs", and delaying the progress of the occupants from 30 seconds to three minutes. If more than one vehicle approaches the end of the driveway at a time, the picketers on most occasions delay each one for a minimum of 30 seconds, and usually a bit longer. During the hours when shifts of employees change, vehicles containing employees are delayed in arriving at the Winthrop facility. The CT Page 6326 longest such delay testified to as occuring [occurring] in the past four weeks has been five minutes, except that on May 27, the occupants of one car, after being delayed and subjected to shouted vulgarities, got out of the car and delayed longer by responding to the strikers in kind.
The delay of each vehicle was shown to result in a back-up of no more than two or three cars on Winthrop Avenue. The driveway is a hundred yards or so from the nearest intersection, and no witness indicated that the method of picketing resulted in any considerable back-up of traffic. No witness indicated that traffic had ever been backed up as far as the nearest intersection.
Winthrop introduced no evidence that the delaying of vehicles described above has had any effect on its ability to operate its facility, or that it has experienced losses of hours worked, unlike the situation in Emhart Industries, Inc. v. Amalgamated Local Union 376, U.A.W., 190 Conn. 371, 377 (1983). Winthrop introduced no evidence that any non-striking employee had resigned or refused to come to work because of the format of the picketing.
Sergeant Richard Randall, of the New Haven Police Department, testified that the district in which he is a supervisor and in which the Winthrop facility is located, has, on occasion, had to deploy police officers from other assignments to respond to complaints that picketers were delaying vehicles in Winthrop's driveway. Sergeant Randall was not asked and did not testify that the public officers charged with the duty to protect the complainant's property are unable or unwilling to furnish adequate protection. No other police officer was called as a witness.
Though Winthrop presented testimony that insults and threats were shouted at workers in vehicles along with pro-union slogans, the application for injunctive relief is not brought on behalf of any of the persons so subjected, and Winthrop does not, in its proposed order, seek any relief with regard to these actions. None of the present employees who testified stated any intention to leave their employment because of the manner of the picketing in the driveway, and one testified that the taunts of the picketers have not and will not deter her from crossing the picket line. CT Page 6327
Union organizer Leslie Frane testified to the effect that the picketers intend to abide by what they understand to be the police department's interpretation that it is not unlawful for a picketer to stand in a driveway for 30 seconds after the driver of a car signifies an intention to enter the driveway. Ted Hendrickson, Winthrop's director of security and transportation, testified that the number of picketers is steadily dwindling, and Ms. Frane confirmed that fewer picketers have been present each week since mid-April. There have been few arrests at the picketing site since April 3, 1993 and none since May 2, 1993.
While a rally involving about 300 people began in front of the Winthrop facility on June 16, 1993, no evidence was presented to indicate that any futher [further] rallies are contemplated.
While Winthrop relies heavily on the approval of injunctive relief in Emhart Industries, supra, Winthrop has simply failed to adduce evidence of harm to its operation that was the reason the trial court in Emhart Industries found the employer to be entitled to injunctive relief.
As the United States Supreme Court observed in Brotherhood of Railroad Trainmen v. Chicago R. I. R. Co., 353 U.S. 30, 40, reh. denied, 353 U.S. 948 (1957), the statutory limitation on the court's injunctive jurisdiction serves the purpose of preventing "courts from upsetting the natural interplay of the competing economic forces of labor and capital."
The plaintiff has simply failed to adduce proof of likelihood of irreparable injury to itself or its property or that the police are unable or unwilling to furnish adequate protection. This court cannot infer such harm nor its magnitude in the absence of evidence. The issue is not whether the language used by the union is vile or whether the picketers are angry but whether there is evidence before the court of substantial, irreparable injury to the plaintiff from the delaying of some cars for about 30 seconds, and whether all requirements of 31-115 C.G.S. have been met.
The court finds that the plaintiff has failed to supply the proof necessary to entitle it to the injunctive relief it seeks.
The application for a preliminary injunction is denied.
Beverly J. Hodgson Judge of the Superior Court CT Page 6328